**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**NICOLE KAUFMANN, as Administratrix of the Estate of of Mason M. Kaufmann-Rich, Deceased; and NICOLE KAUFMANN, Individually,**

                                     **Plaintiffs,**          **1:14-cv-264 (TJM/CFH)**

   **v.**

**THE UNITED STATES OF AMERICA,**

                                     **Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

**I.    INTRODUCTION**

Presently before the Court is the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Dkt. # 4, and the plaintiff's application for an extension of time to respond to the motion. Dkt. # 6. For the reasons that follow, the defendant's motion is granted and the plaintiff's application is denied.

**II.    BACKGROUND**

On June 1, 2011, and from June 3, 2011 to June 5, 2011, Plaintiff Nicole Kaufmann was a patient at The Kingston Hospital for the purpose of giving birth to her child. Dr. Augustus Bentsi-Barnes, M.D., an agent or employee of the Department of Health and Human Services, was the obstetrics and gynecology physician on call at Kingston Hospital during the birth of the plaintiff's child. The baby was delivered by emergency C-Section following an abnormal non-stress test, and was delivered covered in thick meconium. He

1

was intubated and ultimately transferred to Albany Medical Center. The infant died at Albany Medical Center on June 8, 2011.

On March 19, 2013, the plaintiffs filed suit in New York State Supreme Court, County of Ulster (Index No. 13-973), alleging negligence and medical malpractice against The Kingston Hospital and Augustus Bentsi-Barnes, M.D.  The United States removed the action to this Court on September 13, 2013 because, it contended, Dr. Bentsi-Barnes is deemed a federal employee, making actions against him governed by the Federal Tort Claims Act ("FTCA"), and the United States the only proper defendant.  See Notice of Removal in 1:13-CV-1141.   On September 20, 2013, the United States filed a Motion to Substitute the United States as the Defendant and to dismiss the complaint in 1:13-CV-1141.  The motion to dismiss was based upon the fact that the plaintiffs had not filed an Administrative Claim prior to filing suit as is required by the FTCA, and, therefore, this Court lacked jurisdiction to hear the case.  See generally Dkt. # 3 in 1:13-CV-1141. Plaintiff did not file any response papers to that motion.

On March 14, 2014, this Court granted defendant's motion, substituting the United States as a defendant and dismissing the Complaint as against the United States for failure to comply with the jurisdictional requirement of filing an Administrative Claim prior to filing suit against the United States. See Dkt. # 12 in 1:13-CV-1141. The remaining claims against The Kingston Hospital were remanded back to state court for disposition.  Id.

The United States contends that rather than filing an administrative claim with the Department of Health and Human Services, the plaintiffs commenced the instant lawsuit solely against the United States.  The United States now brings a motion to dismiss the complaint in *this* action based on the fact that the plaintiffs failed to file an Administrative

2

Claim prior to bringing suit under the FTCA. Dkt. # 4.

The motion was placed on the Court's July 14, 2014 motion calendar, and the parties were advised that the motion would be decided on the basis of the submissions alone. The plaintiffs did not file timely opposition to the motion but, on July 29, 2014, filed an application requesting "a 4 ? [*sic*] week extension of time to put in papers in opposition to the US attorney's motion." Dkt. # 6. As discussed below, the plaintiffs' counsel contends that he was unaware of the motion until July 23, 2014 when he found it in his e-mail's "spam" folder.

## III. DISCUSSION

### a. Plaintiffs' Application for An Extension of Time to Respond

The plaintiffs' counsel asserts in his affidavit: "I was unaware of the defendant's motion from July 14, 2014[1] until I found it when reviewing e-mails in my computer spam file on July 23, 3014 [*sic*] when I had to go into my spam folder looking for an e-mail on another matter." Sutphin Aff. ¶ 2. Counsel further asserts: "After finding the e-mail I was unable to open them [*sic*] or access the Pacer account because of a soft ware [*sic*] problem, which was rectified on July 24, 2014 by the Help Desk." Id. ¶ 3. Counsel indicates that he contacted the Assistant United States Attorney handling the case but there is no indication that he received consent for the requested relief. Id. ¶¶ 4, 10. Moreover, counsel asserts that he "found the defendant's earlier motion and the Court decision thereon in my spam file." Id. 5; see also id. ¶ 17 ("The undersigned didn't take advantage of [the] 60 day period to file a notice of claim referred to in [the] original motion

---

[1] It is worth noting that the motion was made on May 30, 2014, not July 14, 2014.

3

because this office didn't find out about the motion or decision until Thursday, July 24, 2014."

Because the plaintiffs' request for an extension of time to respond to the defendant's motion was filed *after* the return date of the motion (and well after the date that opposition papers were due, see N.D.N.Y. L.R. 7.1(b)(1)), the matter is governed by Fed. R. Civ. P. 6(b)(1)(B). This Rule provides: "When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

"Excusable neglect is an 'elastic concept' that 'at bottom [is] an equitable one, taking account of all relevant circumstances surrounding the party's omission." Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003), cert. denied, 540 U.S. 1105 (2004) (citations omitted). "Factors to be considered in evaluating excusable neglect include '[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'" Silivanch, 333 F.3d at 366 (alteration in original) (quoting Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993)).

"In most cases, as here, the first, second, and fourth Pioneer factors favor the movant." Doroz v. TECT Utica Corp., 2013 WL 5786641, at *3 (N.D.N.Y. Oct. 28, 2013) (citing Silivanch, 333 F.3d at 366). Courts in the Second Circuit, however, "focus[ ] on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'" Silivanch, 333 F.3d at 366 (quoting Pioneer, 517 U.S. at 395); see

4

also Williams v. KFC Nat. Mgmt. Co., 391 F.3d 411, 415–16 (2d Cir. 2004) (emphasizing "that it is the third factor—the reason for the delay—that predominates, and the other three are significant only in close cases"). "Following the Supreme Court's decision in Pioneer, the Second Circuit has 'taken a hard line in applying the Pioneer test,' and construes the concept of excusable neglect narrowly." Doroz, 2013 WL 5786641, at *3 (quoting In re Enron Corp., 419 F.3d 115, 122 (2d Cir. 2005)).

The plaintiffs' counsel's contention that he was unaware of the filing of the motion because it was in a spam folder sounds of a claim of law office failure. However, "[l]aw office failure *rarely* constitutes an excusable neglect." Shervington v. Village of Piermont, 732 F. Supp.2d 423, 425 (S.D.N.Y. 2010) (citation omitted) (emphasis added). Assuming, *arguendo*, that the notice of the instant motion was diverted into the plaintiffs' counsel's spam file, this does not constitute excusable neglect. "'Attorneys have a duty to monitor the docket,'" Doroz, 2013 WL 5786641, at *3 (quoting In re Futuronics Corp., 1985 WL 2751, at *2 (S.D.N.Y. 1985)), and are deemed to be on constructive notice of the entries on the docket of their client's cases. Friedman v. State Univ. of New York at Binghamton, 2006 WL 2882980, *3 (N.D.N.Y. Oct. 5, 2006) (citations omitted). Attorney Sutphin had a duty to monitor the dockets in both this case and 1:13-CV-1141. His failure to do so does not constitute excusable neglect. See Friedman, 2006 WL 2882980, at *4 (holding that a failure to diligently check the court's docket does not constitute excusable neglect); see also Doroz, 2013 WL 5786641, at *3 ("Plaintiff voluntarily chose this attorney as his representative and cannot now avoid the consequences of the acts or omissions of his freely selected agent. . . . This is nothing more than "garden-variety attorney inattention that fails to rise to excusable neglect.")(interior quotation marks and citation omitted); Miller

5

v. City of Ithaca, 2012 WL 1565110 (N.D.N.Y. May 2, 2012) (rejecting the plaintiff's late-filed papers in support of opposition to motion for summary judgment despite counsel's arguments that "computer errors and the need to traditionally file certain documents" constituted excusable neglect); Kapner v. Riverside Wine & Liquor, Inc., 2011 WL 5154608, *8 (W.D.N.Y. Oct. 28, 2011) (rejecting the plaintiff's argument of "office neglect" where counsel claimed personnel changes led to failure to adhere to a local rule).

Further, any problem that counsel may have had in attempting to open the motion, albeit attempted well after the response deadline, also does not constitute excusable neglect or a valid excuse for an untimely filing. See General Order 22, § 10.2 ("Problems with the Filing User's system . . . will not . . . excuse an untimely filing.").

Had Attorney Sutphin diligently checked the Court's docket, as he was required to do, he would have discovered the defendant's motion in *this* case (and the motion, the Court's Decision & Order, and the Judgment dismissing the case in 1:13-CV-1141) and calculated the date that the plaintiffs' opposition papers were due. The Second Circuit has repeatedly held that "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test. Silivanch, at 366-67; see also Redhead v. Conference of Seventh-Day Adventists, 360 Fed. Appx. 232 (2d Cir. 2010); Canfield v. Van Atta Buick/GMC Truck Inc., 127 F.3d 248, 251 (2d Cir. 1997). The Local Rules of this Court provide that papers in opposition to a motion must be filed seventeen days before the return date. N.D.N.Y.L.R. 7.1(b)(1). The Court's Local Rules are readily available and easily understood. In addition to being able to calculate the filing deadline from the return date based on a reading of the Local Rules, the deadline for filing opposition papers was set forth in the relevant docket entry.

6

See Dkt. # 4 ("MOTION to Dismiss for Lack of Subject Matter Jurisdiction Motion Hearing set for 7/14/2014 10:00 AM in Albany before Senior Judge Thomas J. McAvoy, **Response to Motion due by 6/27/2014,** Reply to Response to Motion due by 7/3/2014")(emphasis added).

Thus, if counsel had monitored the docket, as he was required to do, he would have been aware of the date opposition papers were due, or could have moved for an extension before the time period to do so had expired, even though the documents were diverted to a spam folder. Under the current circumstances, the plaintiffs have not demonstrated excusable neglect. Accordingly, the plaintiffs; application to file late opposition to the defendant's motion is denied.

### b.  Subject Matter Jurisdiction

The Court next turns to the substance of the defendant's motion. It is clear that "[u]nder the FTCA, before a claimant can file suit, he or she must first present the claim to the appropriate federal agency . . . within two years of the date the claim accrued." Phillips v. Generations Family Health Center, 723 F.3d 144, 147 (2d Cir. 2013)(citing 28 U.S.C. § 2675(a)). "The claimant can only initiate his or her lawsuit once the claim has been denied by the agency (or if the agency has failed to make a decision within six months after the claim was filed)." Id. (citing 28 U.S.C. § 2675(a)). In other words, the FTCA requires a plaintiff to exhaust all administrative remedies before filing suit in federal court. Celestine v. Mount Vernon Health Center, 403 F.3d 76, 82 (2d Cir. 2005). This same rule was invoked in 1:13-CV-1141 which resulted in the dismissal of the plaintiffs' action because they had not exhausted administrative remedies. See 1:13-CV-1141 (TJM/CFH), Dkt. No.

12. The plaintiffs still have not exhausted administrative remedies. See Declaration of Meredith Torres, Govt. Ex. B. Thus, this Court lacks subject matter to adjudicate this case thereby requiring its dismissal.[2]

## IV. CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Dkt. # 4, is **GRANTED** and this action is **DISMISSED**. The plaintiffs' application for an extension of time to respond to the defendant's motion, Dkt. # 6, is **DENIED**.

**IT IS SO ORDERED**

**Dated: August 5, 2014**

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

[2] Because more than two years have elapsed since the infant's death on June 8, 2011, it would appear that the filing of a FTCA Notice of Claim would be time barred. However, because a FTCA Notice of Claim is filed with the United States Department of Health and Human Services (HHS), this Court declines to dismiss the matter with prejudice because to do so would presume to know whether HHS might accept a FTCA Notice of Claim at this time.